UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No: 5:19-cr-00146-GFVT-MAS-2 |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| WILMER ALEXANDER HERANDEZ- | ) | **&** |
| CANO, | ) | **ORDER** |
| | ) | |
| Defendant. | | |

*** *** *** ***

This matter before the Court upon Magistrate Judge Matthew A. Stinnett's Report and Recommended Disposition. [R. 110.] Defendant Wilmer Alexander Hernandez-Cano filed a motion to suppress statements obtained as a result of what he believes was an unlawful interrogation by agents with the Drug Enforcement Administration (DEA) and Homeland Security during an unlawful seizure and arrest on December 5, 2019. [R. 76.] The Government opposes Hernandez-Cano's motion. [R. 80.] After considering the arguments presented, Magistrate Judge Stinnett recommends that this Court grant in part and deny in part Hernandez-Cano's Motion to Suppress. For the reasons that follow, Hernandez-Cano's objections are OVERRULED, and Judge Stinnett's recommendation is ADOPTED.

**I**

Magistrate Judge Stinnett outlines the facts in his recommendation. [R. 110.] On December 5, 2019, law enforcement executed a search warrant at Hernandez-Cano's business, where agents found several items of contraband. [R. 59-1; R. 66-1.] During the search, agents seized a Mossberg 12-gauge shotgun, 16 rounds of 12 round gauge shotgun shells, and 5 rounds

of .45 caliber ammunition.  [R. 61-1 at 1.]  On the same day, the DEA and Kentucky State Police made a "probable cause stop" of Hernandez-Cano's vehicle in light of information obtained in regard to Defendant's alien status and seized firearms.  [R. 80-1 at 1; R. 95.].

During the traffic stop, a "sniff" test was performed by a Kentucky State Police drug dog who "alerted positive for the presence of narcotics emanating from the vehicle."  [R. 80-1 at 1]. During a subsequent search of the vehicle, officers located a clear bag suspected of containing heroin.  *Id.*  This unknown substance was later tested and confirmed to be a mixture of heroin and fentanyl.  [R. 80 at 3.]  While the search was being conducted, Hernandez-Cano was outside the vehicle, sitting on the curb, unrestrained.  [R. 95 at 8.].

During the search of the vehicle but prior to the discovery of the suspected heroin, DEA Agent Christopher Hill and ATF Agent James Freeman arrived at the scene.  *Id.* at 7.  Upon arrival, Agent hill was unsure as to whether Hernandez-Cano had been read his *Miranda* rights due to his late appearance on the scene.  *Id.* at 35.  Agent Hill informed Hernandez-Cano that a search warrant was being executed at his business and a shotgun had been found.  *Id.* at 8–9. Hernandez-Cano immediately responded that the shotgun had been a gift from his wife.  *Id.* Agent Hill continued to ask Hernandez-Cano questions related to "officer safety," including whether the substance located in the bag was fentanyl and whether he had firearms located in his home.  *Id.* at 19–20.  Hernandez-Cano was nonresponsive towards the drug related question, but denied having firearms in his home.  *Id.* at 20–21.  Without being advised of his *Miranda* rights, Hernandez-Cano requested the officers call his wife, invoked his right to counsel, and denied consent to a phone search by the officers.  *Id.* at 22–23.  This traffic stop lasted about 10 to 20 minutes.  *Id.* at 57.

After the traffic stop, Hernandez-Cano was transported to his business premises in handcuffs. *Id.* at 40. Upon arrival, Immigration and Customs Enforcement Officer Greg Sherwood interviewed Mr. Hernandez-Cano. *Id.* Officer Sherwood requested that Hernandez-Cano confirm his identity and alien status in the United States. *Id.* at 45. Officer Sherwood explained that his questions were "strictly administrative," and thus, Hernandez-Cano was not required to be read his *Miranda* rights at that time. *Id.* at 35. When asked if Hernandez-Cano had requested his attorney during that time, Officer Sherwood responded, "[t]hat vaguely comes to mind." *Id.* at 41.

Following his interview with Officer Sherwood, Hernandez-Cano was transported to Woodford County Detention Center for processing by Agent Trueblood. *Id.* at 50. Agent Trueblood testified at the hearing that he and Hernandez-Cano only engaged in "small talk," and at no point were investigatory questions asked. *Id.* Agent Trueblood further stated that he was aware that Hernandez-Cano had invoked his right to counsel. *Id.* at 52. However, during this transportation, Hernandez-Cano made unsolicited statements to Agent Trueblood about his arrest. *Id.* The statements included how Hernandez-Cano felt relieved over his arrest, as he had been living a "nightmare" for "five years, or maybe longer." *Id.* Agent Trueblood testified that he did not state anything that would have prompted these statements from Hernandez-Cano. *Id.* at 52–52. Hernandez-Cano made similar statements the following day to Agent Trueblood while he was being transported for his initial appearance. *Id.* Hernandez-Cano stated that "everything happens for a reason," and asked Agent Trueblood whether his statements would be documented. *Id.* Again, Agent Trueblood reaffirmed that he asked no questions to prompt such statements from Hernandez-Cano. *Id.*

In Hernandez-Cano's Motion to Suppress, he asked the Court to suppress all statements and evidence discovered as a result of the above-mentioned incidents.  [R. 76.]  In support of this request, he argues that the statements were obtained in violation of his constitutional rights.  [R. 114.]  Judge Stinnett thoughtfully considered each of the issues presented and determined that Mr. Hernandez-Cano's Motion should be granted in part and denied in part.  [R. 110 at 17.]  Hernandez-Cano raises two objections in regard to the statements Judge Stinnett does not recommend be suppressed [R. 114], which the Court reviews *de novo*.  *See* 28 U.S.C. § 636(b)(1)(c).

## II

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. CONST. amend. V.  The right against self-incrimination applies when a suspect is subject to custodial interrogation.  *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966).  Thus, a *Miranda* warning is only required when a defendant is in custody *and* being interrogated.  *Id.*  When a defendant seeks suppression on *Miranda* grounds, he bears the burden of proving that he was subjected to a custodial interrogation, and thus entitled to *Miranda* warnings in the first place.  *United States v. Pacheco-Alvarez*, 227 F. Supp. 3d 863, 879 (S.D. Ohio 2016).   The government must show a knowing and voluntary *Miranda* waiver by a preponderance of the evidence.  *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

There is no evidence in the record that indicates law enforcement ever made Hernandez-Cano aware of his *Miranda* rights.  Thus, it is the responsibility of the Court to answer two remaining questions: (1) whether Hernandez-Cano was in custody when the relevant statements

4

were made, and (2) whether the statements were made in response to "express questioning or its functional equivalent."

## A

As an initial matter, traffic stops are generally non-custodial and do not require *Miranda* warnings. *Berkemer v. McCarty*, 468 U.S. 420, 437–38 (1984). Traffic stops tend to be noncustodial because they are usually "brief, non-threatening, and conducted in the presence of others," but not all traffic stops follow this rubric. *Id.* A more coercive stop may entitle a defendant to *Miranda* warnings. *Id.* In *Swanson*, the Sixth Circuit outlined the factors for when a vehicle stop has become so coercive as to become custodial in nature. *U.S. v. Swanson*, 341 F.3d 524, 529 (6th Cir. 2003). These factors include: (i) whether a reasonable person in the defendant's position would feel free to leave; (ii) the purpose of the questioning; (iii) whether the place of the questioning was hostile or coercive; (iv) the length of questioning; and (v) other indicia of custody such as whether the suspect was told he was free to leave, could move freely during questioning, and whether the defendant initiated the contact with police or agreed to answer some questions. *Id.* None of these factors are dispositive; the test is the totality of the circumstances. *Id.*

Considering each factor in turn, the Court finds that, on balance, the totality of circumstances weigh in favor of custody. At the scene of the traffic stop, there were seven to ten law enforcement officers and a drug-sniffing dog. [R. 95 at 55.] Although Hernandez-Cano was not physically restrained, he would not have been able to access his vehicle while the search took place. [R. 110 at 6.] Thus, the first factor weighs toward a finding of custody because it is clear that a reasonable person in this same position would not have felt free to terminate the encounter. *Id.* In regard to the second factor, the purpose of the law enforcement questioning was outside

the scope of a routine traffic stop.  Agent Hill stated that the first statements he made to Hernandez-Cano concerned not only the traffic stop, but he informed him of the search being executed at his business.  [R. 95 at 538.]  During the search of his vehicle for drugs, Hernandez-Cano was questioned by agents about drugs and firearms in his car, at his business, and at his residence.  *Id.* at 538, 549–52.

In respect to the third factor, a public area does not imply custody, although multiple officers, vehicles, and a police dog, can "transform[] that benign public place into a restrictive area of confinement, which also tips the scales in favor of Defendant" *United States v. Jimenez-Robles*, 98 F. Supp. 3d 906, 917 (E.D. Mich. 2015).  The fourth factor, which entails the length of questioning by law enforcement, was not shockingly long, but longer than the usual few minutes of a routine traffic stop.  In regard to the fifth and final factor, there is no evidence to suggest that the officers told Hernandez-Cano that he was free to leave.  Agent Hill even testified that Hernandez-Cano, while not under arrest, was being detained.  [R. 95 at 8.]  The Court concludes that the totality of circumstances infers a finding that Hernandez-Cano reasonably believed that he was not free to leave, and thus, was in police custody.

## C

Now that the Court has concluded that Hernandez-Cano was in custody and never provided his *Miranda* warnings, the final question is whether Hernandez-Cano's statements were made in response to interrogation by law enforcement.  *Miranda* defined interrogation as "questioning initiated by law enforcement officers" after the suspect had been taken into custody.  384 U.S. at 444.  This definition was expanded by the Supreme Court in *Rhode Island v. Innis*, when the Court established that "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those

normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." 446 U.S. 291, 301 (1980). When statements are made in contravention of the above rules, then the statements will be excluded from admission at trial.

**1**

First, the Court turns to assessing whether the statements made at the scene of the arrest, if any, should be suppressed. The Court's assessment of the facts has been made unclear by Agent Hill's inconsistent narrative of events. [R. 110 at 8.] Agent Hill's testimony before the grand jury, at the evidentiary hearing underlying this motion, and as an affiant in support of the criminal complaint in this matter, have been contradictory. *Id.* However, Hernandez-Cano has only pointed out Agent Hill's inconsistencies, as he has failed to include an alternative narrative. *Id.* Thus, the Court must construe the uncontested portions of Agent Hill's testimony taken in a light most favorable to Defendant.

"There is no dispute that following his arrival at the traffic stop, Agent Hill informed Hernandez-Cano that the traffic stop was related to the execution of a federal search at Hernandez-Cano's business, where law enforcement had found a shotgun." *Id.* Hernandez-Cano does not deny that "right after [Agent Hill] made the statement that [officers] had found the shotgun in his office," Hernandez-Cano stated that the gun was a "gift from his wife." *Id.*

Following this statement, the facts become unclear as Agent Hill contradicts his own testimony in regard to whether he asked Mr. Hernandez-Cano any questions. *Id.* The Court cannot glean from these pieces of evidence a perfect picture of what occurred. However, certain conclusions from the evidence are inevitable and are sufficient to resolve the instant motion. According to the record, "Agent Hill questioned Hernandez-Cano about whether the bagged

7

substance found in his vehicle was fentanyl" but the record does not indicate whether Defendant responded. *Id*. at 8–9.  Agent Hill proceeded to ask Defendant if he had firearms located at his residence and both parties agree that Defendant responded in the negative. *Id*. at 9.  Next, Agent Hill asked Hernandez-Cano if he could search the cell phones found in his vehicle. *Id*.  After Defendant did not respond, Agent Hill notified Defendant that he was under arrest for the firearm and suspected narcotics. *Id*.  That is when Hernandez-Cano requested that the officers notify his wife, rejected consent for officers to search the cell phones, and invoked his right to counsel. *Id*.

Following Agent Hill's admission to the "interview" during cross-examination, a dispute remained as to when Agent Hill asked Hernandez-Cano about the suspected firearms and drugs at his home. *Id*.  Agent Hill was not confident that the questioning took place well after his arrival on the scene. *Id*.  Hernandez-Cano's cross-examination purported that these questions took place during the initial conversation with Agent Hill, when Hernandez-Cano admitted ownership of the shotgun found at his business. *Id*.  As Judge Stinnett states, common sense would reject this notion. *Id*.  The undisputed testimony suggests that the suspected narcotics in Hernandez-Cano's car had yet to be discovered when Agent Hill appeared on the scene. *Id.*  It can be inferred that Agent Hill would not be asking about the contents of a bag of narcotics that had yet to be discovered. *Id*.  It is much more likely that the questions concerning the bag of narcotics took place following its discovery, and well after Agent Hill and Hernandez-Cano's discussion concerning the shotgun. *Id*.

### a

In regard to the Hernandez-Cano's statement that he owned the shotgun at his business, the Court concludes that it was not made in response to express questioning or its functional equivalent by law enforcement.  However, Defendant's objection suggests that this is precisely

the type of provocative conversation that would constitute the functional equivalent of interrogation. [R. 114 at 8.] Statements which are volunteered, *i.e.*, not made in response to custodial interrogation, will not be suppressed for lack of *Miranda* warnings. *Innis*, 446 U.S. at 302–03. *United States v. Chalmers*, 554 F. App'x 440 (6th Cir. 2014) provides an example of statements which were not made in response to custodial interrogation. In *Chalmers*, police were transporting a defendant arrested on gun and drug charges to the police station. The defendant heard the officers asking dispatch to run a query on the gun they had recovered from defendant's home and discussing that the gun was stolen. Neither officer had spoken to the suspect; however, the suspect asked if the gun was stolen. An officer said it was "stolen out of Mississippi." *Id.* "Then Chalmers 'just blurt[ed] out,' saying I didn't steal that gun. I paid $20 for that gun off the street. I didn't steal nothing." *Id.* The *Chalmers* court held these incriminating statements were not the result of express questioning or its functional equivalent; rather, the defendant himself had initiated the conversation and the officers' statements to each other were not designed to illicit a response. *Id.* at 448.

Applying the broad definition of custodial interrogation to the facts in this case, this Court agrees that Agent Hill's notification to Hernandez-Cano of the discovery of the firearm during the search of his business "was neither a question nor a comment riddled with coercive pressure." [R. 110 at 10.] Even though Agent Hill provided information regarding the discovery of the firearm, these facts do not take Defendant's voluntary communication and render it to be the product of official interrogation. Defendant heard that a shotgun was found during a search of his business and blurted out that his wife gave him the shotgun. Defendant has presented no evidence in the record that would contradict the Agent's testimony on this point.

9

Thus, the Court concludes that the evidence is not sufficient to demonstrate that Defendant was subjected to the functional equivalent of interrogation.  It is in this context that Defendant elected to make a statement regarding his firearm.  When such an inculpatory statement is made voluntarily while in custody but not in response to official interrogation, no grounds exist pursuant to *Miranda* for the statement to be suppressed.  Therefore, Hernandez-Cano's statement that his wife gifted him the shotgun found at the business will not be suppressed for purposes of trial.

**b**

In regard to the questions Agent Hill asked about the discovered bag of narcotics, possible firearm at Hernandez-Cano's home, etc., the Court finds Defendant was subjected to custodial interrogation without the benefit of *Miranda* warnings.  There is no dispute that Agent Hill was "expressly interrogating or 'interviewing' Hernandez-Cano."  [R. 110 at 10.]  However, the United States argues that the questions asked in this context at the scene by Agent Hill fell within the public safety exception to *Miranda*.  Having examined the record in light of relevant case law, the Court finds that the public safety exception does not apply in this context.

In *New York v. Quarles*, 467 U.S. 649 (1984), "the Supreme Court held that 'overriding considerations of public safety' could justify a failure to provide *Miranda* warnings before initiating custodial interrogation."  *United States v. Hodge*, 714 F.3d 380, 385 (6th Cir. 2013).  "Such questioning is permissible when 'officers have a reasonable belief based on articulable facts that they are in danger.'"  *Id*. (quoting *United States v. Talley*, 275 F.3d 560, 563 (6th Cir. 2001)).  In determining the applicability of the public safety exception, the court considers factors including "the known history and characteristics of the suspect, the known facts and circumstances of the alleged crime, and the facts and circumstances confronted by the officer

10

when he undertakes the arrest." *United States v. Williams,* 483 F.3d 425, 428 (6th Cir. 2007). For an officer to have a reasonable belief that he is in danger, at minimum, he must have reason to believe (1) that the defendant might have (or recently have had) a weapon, and (2) that someone other than police might gain access to that weapon and inflict harm with it. *Id.*

The questions that Agent Hill asked Hernandez-Cano at the scene had nothing to do with safety. Specifically, the questions in regard to whether the bag of narcotics contained heroin did not infer that there was an immediate danger to Agent Hill, as he could have taken the necessary precautions without questioning Defendant. [R. 110 at 12.] The questions in regard to the presence of firearms at his residence were also not in relation to immediate danger, as they were in reference to future possible danger. *Id.* Agent Hill stated that there would likely be "follow-up warrants" for Hernandez-Cano's residence and the presence of firearms was "something [Agent Hill] would like to know about the scene." *Id.* Thus, the question was in regard to a theoretical follow-up warrant, but not a present harm or action that needed to be taken at that moment. *Id.*

Based on the record presented, it is clear that Agent Hill's questions during the interview of Hernandez-Cano at the scene of the traffic stop were intended to elicit an incriminating response. There was not an immediate danger present that prompted Agent Hill's questions. Thus, any statements Hernandez-Cano made in response to the questions asked by Agent Hill during the traffic stop are suppressed.

**2**

Next, Judge Stinnett turned to the "statements made by Hernandez-Cano at the business premises to ICE Officer Sherwood after the defendant had invoked his right to counsel, as invocation Officer Sherwood 'vaguely' recalls." [R. 110 at 13.] The right for an individual to

11

exercise his or her *Miranda* rights, notably his or her right to "cut off questioning", must be "scrupulously honored" in order to "counteract [] the coercive pressures of the custodial setting." *Michigan v. Mosley*, 423 U.S. 96, 103 (1975) (quoting *Miranda*, 384 U.S. at 477). "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Miranda*, 384 U.S. at 474.

Questioning a suspect about biographical information generally does not trigger the *Miranda* Rule under the "routine booking" exception. *E.g., United States v. Ozuna*, 170 F.3d 654, 657 n.1 (6th Cir. 1999) ("[N]ot all questioning of in-custody suspects constitutes interrogation triggering *Miranda* protections. In the context of routine booking following an arrest, this Court has held that 'routine biographical questions are not ordinarily considered interrogation.'" (quoting *United States v. Clark*, 982 F.2d 965, 968 (6th Cir. 1993))); *United States v. Mata-Abundiz*, 717 F.2d 1277, 1280 (9th Cir. 1983) (discussing "routine booking procedures" exception to *Miranda*). However, questioning aliens about their immigration status when a suspect's "foreign citizenship and immigration status are core elements of the crime with which he is charged" trigger *Miranda*. *Jimenez-Robles*, 98 F. Supp. 3d at 912. Courts thus routinely require *Miranda* warnings before law-enforcement officers may ask basic background questions of a suspected alien, at least where those questions are reasonably likely to elicit incriminating information about a particular offense. *Pacheco-Alvarez*, 227 F. Supp.3d at 884. In *Jimenez-Robles*, the court suppressed a defendant's answers to immigration-related questioning during a traffic stop and roadside detention because the officer "should have known that the questions he put to [the defendant]—whether he was a U.S. citizen and whether he was in the country legally—were reasonably likely to elicit an incriminating response." 98 F. Supp.

3d at 913.  The court focused on the fact that the border patrol agent knew of the defendant's prior deportation before questioning him about his immigration status.  *Id.*

Following precedent, Officer Sherwood was required to provide *Miranda* warnings before questioning Hernandez-Cano about his citizenship and immigration status.  Agent Hill testified that he was aware of Hernandez-Cano's immigration status before his arrival on the scene.  [R. 110 at 14.]  However, Agent Hill told Officer Sherwood to question Hernandez-Cano about his alien status.  *Id.*  It is undisputed that Hernandez-Cano invoked his right to counsel prior to being transported to his business, where he was questioned by Officer Sherwood.  *Id.*  At this point, Officer Sherwood was unsure whether Hernandez-Cano had been read his *Miranda* rights but "vaguely" remembers Hernandez-Cano invoking his right to counsel.  *Id.* at 15.  Officer Sherwood testified that he believed *Miranda* was inapplicable in this situation because the questions were "administrative."  *Id.*  However, as Judge Stinnett points out, Officer Sherwood should have known such questions involving Hernandez-Cano's immigration status would elicit incriminating statements, given one of the crimes he was alleged of committing was an alien in possession of a firearm.  *Id.*   "As an ICE agent responsible for conducting Homeland Security Investigations," Officer Sherwood "'is or should be familiar with the immigration laws of the United States, including those that carry criminal penalties," such as being an unlawful alien in possession of a firearm.  *Pacheco-Alvarez*, 227 F. Supp. 3d at 886 (quoting *Mellado-Evanguelista*, 2009 WL 161240, at *6 (D. Minn. Jan. 22, 2009)).

Under these circumstance, the Court concludes that Officer Sherwood, at a minimum, should have known that the questions in regard to Hernandez-Cano's immigration status were likely to elicit incriminating responses.  Following Hernandez-Cano invoking his right to counsel, no law enforcement should have initiated the questioning of Defendant without an

13

attorney present.  Thus, Hernandez-Cano's statements regarding his citizenship and immigration status in response to Officer Sherwood's questions must be suppressed.

**3**

Finally, the Court will address whether Defendant's statements to Agent Trueblood made during transportation should be suppressed.  Voluntary, spontaneous declarations are not the product of interrogation.  *See United States v. Murphy*, 107 F.3d 1199 (6th Cir. 1997).  Further, the Supreme Court held that if a suspect invokes his *Miranda* rights, he is not subject to "further interrogation . . . unless the accused himself initiates further communication, exchanges, or conversations with the police."  *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981).  This type of initiation occurs when, "without influence by the authorities, the suspect shows a willingness and a desire to talk generally about his case."  *United States v. Whaley*, 13 F.3d 963, 967 (6th Cir. 1994).  Expressing some limitations on this general proposition, it is noted that there may be circumstances where "a bare inquiry by either a defendant or by a police officer should not be held to 'initiate' any conversation or dialogue."  *Id.* at 966–67.  Specifically, statements about "routine incidents of the custodial relationship, will not generally 'initiate' a conversation" under *Edwards.  Id.*  It is not the case that every question a suspect asks demonstrates a desire to start a conversation with police.  *See United States v. Soto*, 953 F.2d 263, 265 (6th Cir. 1992) (requesting to keep belongings separate from those of co-defendant is not initiation); *Jacobs v. Singletary*, 952 F.2d 1282, 1294 (11th Cir. 1992) (asking officer, "Where are my children?" is not initiation).

Unlike Agent Hill's testimony, Agent Trueblood's account of events is not contradicted by other evidence or testimony.  [R. 110 at 16.]  Also, Agent Trueblood's police report that he wrote only days after the incident lends credibility to his testimony.  *Id*.  Hernandez-Cano was

14

not expressly interrogated or subject to the functional equivalent by Agent Trueblood during his transport because Defendant initiated the conversation with Agent Trueblood by making unsolicited statements. His statements were "not merely a necessary inquiry arising out of the incidents of the custodial relationship" and suggest that Hernandez-Cano wanted to talk about his arrest. *Whaley*, 13 F.3d at 967 (citation omitted). As Judge Stinnett correctly stated, the uncontradicted evidence remains that Hernandez-Cano initiated the conversation. [R. 110 at 16.] Although Hernandez-Cano claims the officers' testimony is inconsistent, Hernandez-Cano started the conversation and his voluntary communication cannot form the basis of a *Miranda* violation. While Agent Trueblood did not question him directly, Hernandez-Cano's position is that Agent Trubelood's testimony does not establish that Hernandez-Cano initiated the conversation about the charges against him. [R. 114 at 10.] The record does not support Hernandez-Cano's argument.

There is no evidence indicating that Officer Trueblood tried to solicit incriminating statements from Hernandez-Cano, using the types of psychological ploys that concerned the *Miranda* Court. The critical point is that Hernandez-Cano's comments were not made at the insistence of the authorities. *Arizona v. Mauro*, 481 U.S. 520, 529–30 (1987) ("In deciding whether particular police conduct is interrogation, we must remember the purpose behind our decisions in *Miranda* and *Edwards*: preventing government officials from using the coercive nature of confinement to extract confessions that would not be given in an unrestrained environment."). Therefore, the Court rejects Hernandez-Cano's objection that the statements were obtained in violation of Hernandez-Cano's constitutional rights and adopts Judge Stinnett's recommendation that such statements should not be suppressed.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** that

Defendant Wilmer Alexander Hernandez-Cano's Objections [R. 114] are OVERRULED.  Judge

Stinnett's Recommended Disposition [R. 110] is **ADOPTED**.

This the 24th day of July, 2020.

Gregory F. Van Tatenhove
United States District Judge